IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00231-CMA-MJW

EXECUTIVE CONSULTING GROUP, LLC, *d/b/a* ECG Management Consultants,

    Plaintiff,

v.

DEIRDRE BAGGOT,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO CORRECT**

---

This matter is before the Court on Defendant Deirdre Baggot's Motion to Correct, in which Defendant seeks to "correct the record" made by Defendant and/or Defendant's counsel at a motions hearing before this Court on March 1, 2018. (Doc. # 53.) For the reasons that follow, Defendant's Motion to Correct is denied.

## I.     BACKGROUND

Plaintiff Executive Consulting Group, LLC, *d/b/a* ECG Management Consultants ("ECG"), is a strategic consulting firm serving the healthcare industry. (Doc. # 1 at 2.) Defendant began working as a Principal for ECG on January 11, 2016. (*Id*. at 3.) Two weeks prior, Defendant signed an offer letter from ECG that provided she would lead ECG's bundled payment practice and outlined her compensation. (*Id*. at 3–4.) The offer letter also stated that Defendant, as an ECG employee, was "bound to hold [corporate] information in strictest confidence and not to disclose confidential

information or allow it to be disclosed, during or after [her] employment." (*Id*. at 4.) Defendant executed an Employment Agreement with ECG at the same time. *See* (Doc. # 1-1.) Relevant here, the Employment Agreement included a Non-Competition Provision, a Non-Solicitation Provision, and a Confidentiality Provision. (*Id*. at 4–9.) In the event Defendant violated these or other provisions, the Employment Agreement allowed ECG to "apply for a temporary restraining order, preliminary injunction, specific performance, or other interim or equitable relief." (*Id*. at 11.)

On January 19, 2018, some two years into her employment with ECG, Defendant informed her supervisor in a phone call and a letter that she was resigning from ECG effective 30 days thereafter. (Doc. # 1 at 9.) On January 23, 2018, Defendant informed her supervisor that she was accepting a new position with ECG's direct competitor, The Chartis Group ("Chartis"). (*Id*.)

On January 29, 2018, ECG filed a complaint for injunctive relief against Baggot. *See generally* (*id*.) The Complaint alleges that Baggot sent numerous emails containing ECG's confidential, proprietary, and trade secret information, from her ECG account to her personal email address three days before she submitted notification of her resignation. (*Id*.) It also alleges that Baggot was scheduled to speak at a conference on ECG's behalf and using its material the following day, January 30, 2018. (*Id*.) ECG raises five claims for relief: (1) breach of contract; (2) misappropriation of trade secrets under federal law; (3) misappropriation of trade secrets under Colorado state law; (4) misappropriation of trade secrets under Delaware state law; and (5) unjust enrichment. (*Id*. at 14–17.) ECG simultaneously filed an Emergency Motion for a Temporary

Restraining Order ("TRO") (Doc. # 2) and a Motion for a Preliminary Injunction (Doc. # 3).

The following day, January 30, 2018, the Court issued ECG's requested TRO after a brief hearing on ECG's emergency motion. *See* (Doc. ## 12, 13.) The TRO ordered Defendant to "immediately return to ECG all confidential, proprietary, and/or trade secret information and property obtained from ECG" and to "preserve, in their original state, all documents and information in [Defendant's] possession, custody, or control, or otherwise available to [Defendant], related to the issues" set forth in ECG's Complaint. (Doc. # 13 at 2.) The Court set a hearing on ECG's Motion for a Preliminary Injunction for March 1, 2018. (Doc. # 12.)

An exhibit introduced at the preliminary injunction hearing on March 1, 2018 (Exhibit 17), suggests that on January 31, 2018, Chartis's Chief Information Officer searched Chartis's network and Defendant's newly-issued, Chartis-owned computer and concluded that "a removable drive . . . [was] being used on the laptop, and there [was] a folder named 'ECG' on it" (the "ECG Folder"). *See* (Doc. # 59-1 at 3.) Chartis's information officer also reported that Defendant had recently opened files concerning two of ECG's clients on Chartis's laptop. (*Id*.) For purposes of this Order and subsequent proceedings, the Court will identify this removable jump drive as the "Original Jump Drive."

On February 1, 2018, Defendant's counsel informed ECG's counsel that they "ha[d] confirmed that [Defendant] possesse[d] no other documents from her employment with ECG aside from the emails sent to her personal account, and [they

had] engaged a vendor to extract, delete and return those documents to ECG." (Doc. # 59-2 at 1.)

On February 14, 2018, Defendant served her sworn responses to discovery requests from ECG that she identify and produce ECG documents and data and any computers and external storage drives that contained such document and data. (Doc. # 59 at 3, 9, 10.) In her response, Defendant did not identify or produce the Original Jump Drive, nor did she identify or produce the ECG Folder or its contents. (*Id.*)

On February 22, 2018, Defendant's counsel notified ECG's counsel via email that upon returning from an overseas trip, Defendant "located a flash drive containing PowerPoint presentations . . . , though none of these appear to contain ECG information," and "a handful of printed documents that were used and dated in 2016." (Doc. # 59-4 at 1.) Defendant's counsel produced that jump drive (the "February 27 Jump Drive") to ECG on February 27, 2018. (Doc. # 59 at 4.) On February 28, 2018, Defendant served supplemental discovery responses, stating that "additional items were produced to opposing counsel on February 27, 2018." (Doc. # 59-5 at 3.)

At 6:48 PM on February 28, 2018, the evening before the preliminary injunction hearing, Defendant's counsel emailed ECG counsel:

> [Plaintiff] today located an additional flash drive in her possession that contains ECG materials. We have had the flash drive imaged by our vendor, and the vendor generated a summary report of the metadata, attached hereto. At this time we cannot turn over the flash drive as it contains items covered by the attorney client privilege . . . as well as confidential items from The Chartis Group.

(Doc. # 59-6 at 1–2.) Defendant did not consent to ECG's request to continue the preliminary injunction hearing. (Doc. # 59-7 at 1.)

4

The Court conducted the preliminary injunction hearing as scheduled on March 1, 2018. *See* (Doc. # 51.) The Court ordered Defendant to turn over this newly-discovered jump drive (the "March 1 Jump Drive") and her personal computer to ECG for forensic analysis by the close of the hearing, and Defendant did so. *See* (Doc. # 51.) Defendant's counsel represented that the jump drive Defendant had found the day before, on February 28, 2018, was the same jump drive that Chartis's information officer had previously detected in use on Defendant's Chartis-issued computer, which Defendant later confirmed. *See* (Doc. # 59-1 at 3.) The Court observed that Defendant's own spreadsheet indicated that the jump drive had been repeatedly used in January and February 2018. In response to the Court's inquiry as to why Defendant had been unable to find the jump drive until February 28, 2018, Defendant's counsel's explanation was that "[Defendant] just couldn't find it." Defendant later explained that when her counsel had asked if she had any jump drives, she had remembered that she used a jump drive to download and prepare documents for Chartis's human resources department. She testified that "the reason it took so long to find . . . I just stuck it in a printer . . . , and I couldn't find it. I think my husband may have moved it."

ECG reports that it provided that March 1 Jump Drive to its forensic expert for imaging and analysis. (Doc. # 59 at 5.) According to ECG, the forensic analysis established:

> (1) All but one of the documents contained on the [March 1 Jump Drive] were placed onto the drive at various times on February 27–28, 2018), (2) the thumb drive was not the original thumb drive on which such documents resided, (3) the ECG folder referenced in the Chartis email was not contained on the thumb drive, (4) the [Original Jump Drive] has not yet been provided, and (5) a thumb

5

drive was plugged into Defendant's ECG computer that has not been produced in this case.

(*Id.* at 5–6); *see also* (Doc. # 59-9.)  On March 5, 2018, ECG requested that Defendant produce the Original Jump Drive.  (Doc. # 59-10.)

On March 8, 2018, Defendant's counsel filed the Motion to Correct now before the Court.  (Doc. # 53.)  Defendant's counsel asks to "correct the record created in the preliminary injunction hearing" so far as it relates to: (1) whether the March 1 Jump Drive is "the very object referenced in Exhibit 17 (regarding a jump drive inserted into a Chartis computer)", and (2) when the documents on the March 1 Jump Drive were placed there.[1]  (*Id.* at 1–2.)  Defendant's counsel also states that it "shall review the hearing transcript when available and shall submit an additional or a more detailed correction if necessary."  (*Id.* at 2.)

Also on March 8, 2018, Defendant's counsel filed a Motion to Withdraw as Attorney, asserting that its "continued representation presents an impermissible conflict of interest."  (Doc. # 52.)  The Court granted the Motion to Withdraw as Attorney the following day.  (Doc. # 54.)  On March 12, 2018, Defendant's new counsel entered Notices of Entry of Appearance.  (Doc. ## 55, 57.)

ECG replied in opposition to Defendant's Motion to Correct on March 12, 2018.  (Doc. # 59.)  ECG argues that "there is no basis in fact or in law for Defendant to attempt to 'correct the record' by changing vaguely referenced attorney statements and

---

[1] The Court observes that the Motion to Correct begins, "Attorney Leah E. Capritta . . . moves the Court to correct the record created in the preliminary injunction hearing held before the Court on March 1, 2018."  (Doc. # 53 at 1.)  It is not clear to the Court whether Ms. Capritta, no longer representing Defendant, *see* (Doc. ## 52, 54), seeks to correct her own statements at the hearing, Defendant's statements, or both.

sworn testimony." (*Id.* at 2.) ECG alleges that the Motion to Correct "divulges . . . sinister and unconscionable behavior—the apparent manufacture of evidence in an effort to trick the Court and ECG into believing that Defendant returned" the Original Thumb Drive. (*Id.*)

## II.    DISCUSSION

### A.    LEGAL STANDARD

Local Rule of Civil Practice 7.1 requires "a motion involving a contested issue of law" to "state under which rule or statute it is filed and [to] be supported by a recitation of legal authority in the motion." D.C.Colo.LCivR 7.1(d). Defendant moves to correct the record pursuant to Colorado Rule of Professional Conduct 3.3(a)(3). (Doc. # 53 at 1.). This rule prohibits a lawyer from knowingly offering evidence that the lawyer knows to be false. C.R.P.C. 3.3(a)(3). It also requires that "[i]f a lawyer, the lawyer's client, or witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."[2] *Id*. "The concept of materiality encompassed in [Rule 3.3(a)] is not directed by the outcome a particular matter, but rather whether there is potential that the information **could** influence a determination as to the matter." *In re Fisher*, 202 P.3d 1186, 1202 (Colo. 2009), *reh'g denied*, *cert. denied*, 558 U.S. 823 (2009).

---

[2] The rule "requir[es] an attorney's actual knowledge that evidence is false before the duty to take remedial measures is triggered." *Matter of Olsen*, 2014 CO 43, ¶ 24.

**B.     APPLICATION**

Defendant states in the Motion that "colloquy at the hearing, and possibly testimony elicited by counsel, indicated that the documents on the jump drive were placed there in January 2018 . . . and on February 14, 2018." (Doc. # 53 at 1–2.) However, according to the Court's review of the unofficial Bridge transcript, it does not appear that either Defendant's counsel or Defendant made any statements about **when** the files on the March 1 Jump Drive were placed there.  Defendant's counsel and Defendant spoke only of when the March 1 Jump Drive was discovered, why it took so long for Defendant to find the drive, and how Defendant had used the drive on her Chartis-issued computer, as the Court previously recounted.  The new information that Defendant's counsel has—"that the documents were placed in the jump drive on February 27–28, 2018," (*id*. at 2)—does **not** appear to explicitly contradict any statements made during the preliminary injunction hearing.[3]  There is therefore no basis for granting the Motion to Correct and altering any statements made at the hearing.

If the official transcript of the hearing demonstrates that Defendant or Defendant's counsel actually made statements about when documents were placed onto the March 1 Jump Drive, the Court would have a myriad of alternative reasons for denying Defendant's Motion to Correct.  ECG articulated several such reasons in its Response.  *See* (Doc. # 59.)  The Court is especially concerned by ECG's accurate observation that "the Motion does not confirm whether the Original [Jump] Drive has

---

[3] The Court will not, at this point in the litigation, make inferential leaps to find inaccuracies or untruths, as any such inconsistencies between Defendant's testimony and alleged facts will bear on its credibility determinations.

been located or still exists. While it may be inferred from the Motion that the March 1 [Jump] Drive is not the same as the Original [Jump] Drive, no mention is made concerning whether Defendant is still in possession of the Original [Jump] Drive, or if she disposed of it." (*Id.* at 10.) These are critical questions that, left unanswered, suggest that Defendant may have manufactured evidence to convince the Court and ECG that the March 1 Jump Drive was the Original Jump Drive.

The Court takes very seriously any deceptive conduct and **strongly** exhorts Defendant to recognize the precarious situation in which she has entangled herself. Defendant would do well to **immediately and fully** comply with the TRO.

### III.     CONCLUSION

Accordingly, the Court DENIES Defendant's Motion to Correct (Doc. # 53).

DATED:  March 21, 2018

BY THE COURT:

*[signature]*

_____
CHRISTINE M. ARGUELLO
United States District Judge